OPINION OF THE COURT
April A. Newbauer, J.
Defendant moves pursuant to Civil Rights Law § 50-a (2) and Criminal Procedure Law § 610.25 for the issuance of a subpoena duces tecum to both the Civilian Complaint Review Board (CCRB) and the New York City Police Department (NYPD) for personnel records pertaining to the arresting officer in this case. The defense seeks material contained in the records to cross-examine the officer at a hearing and/or for use at trial.[1] The motion was served on CCRB, NYPD and the officer in question as well as the Bronx County District Attorney’s Office. Only the NYPD has responded, and opposed the motion. The defendant’s motion is granted in part as described below.
Civil Rights Law § 50-a provides that all personnel records of any police agency shall be considered confidential and not subject to general inspection and review without the express consent of the police officer except by court order. In People v Gissendanner (48 NY2d 543 [1979]), the Court of Appeals set out a framework for analyzing a defendant’s application to subpoena police records under section 50-a. Of particular relevance here, the Court noted that records are properly obtained when the defendant demonstrates that the prior bad acts detailed in the officer’s disciplinary records bear special relevance to the factual circumstances of the defendant’s case. *513 Here, the defendant seeks access to the officer’s CCRB and NYPD files to uncover facts in complaints and information about any discipline in connection with his alleged illegal seizure of weapons in three cases, and more about his participation in a 2013 traffic “ticket fixing” scheme for which he was disciplined.
In two of the weapons cases, federal judges found this officer incredible as a matter of law after he testified at suppression hearings about the circumstances leading to his seizure of weapons. (See United States v Williams, 2011 WL 5843475, 2011 US Dist LEXIS 134352 [SD NY, Nov. 21, 2011, No. 11 Cr 228, Sweet, J.]; United States v Russel, US Dist Ct, SD NY, No. 11 Cr 312, Koeltl, J., Nov. 9, 2011.) The defendant alleges that the same officer will likely be a key witness in the suppression hearing to be held in this case, having stopped the vehicle in which the defendant was a passenger, searched him and subsequently arrested him for possession of a weapon. The defense has shown a significant nexus between the potential evidence in the requested materials and the facts here, warranting issuance of the subpoena as to personnel records related to the two federal cases.[2] The present case involves the officer’s alleged observation of a driver and his accusations against the driver and defendant passenger. The officer’s previous incredible statements concerning his analogous actions in stopping a vehicle and searching for weapons could bear directly on the reliability of the criminal charges here. Further, advance review of the materials pertaining to those arrests may assist the defendant in investigating and developing his defense, even if the People choose not to call the officer as a witness. The defendant suggests that this officer engages in a pattern of improper conduct in searching for weapons. Personnel records of similar incidents may either enhance or dispel *514 this view of the officer’s modus operandi in this case even if the People do not call him as a witness.
No opposition was filed by the People, the CCRB or the officer himself. The generic memo of law filed by the NYPD legal department only tangentially addresses the issues in this motion. To the extent that the law enforcement agency has an interest independent of the officer in the outcome of a motion to produce personnel records, its arguments opposing the subpoena are not persuasive. For example, the NYPD does not argue that it is administratively burdened by the defense’s request or that information in the records would compromise ongoing law enforcement efforts. The opposition cites People v Martin (53 Misc 3d 1207[A], 2015 NY Slip Op 52007[U] [Sup Ct, NY County 2015]) and other cases for the principle that a federal lawsuit filing, or a settlement of a lawsuit without acknowledged liability on the part of the defendant, is not an adequate predicate for pretrial review of police personnel records. Many of these cases concern applications for CCRB and NYPD records underlying civil lawsuits filed by individuals alleging misconduct unparallel to the facts of the matter in which they are sought. (See id.) A number of courts have found the release of personnel records appropriate if the police conduct is alleged to be similar enough in nature although the federal cases did not result in a finding or acknowledgment of wrongdoing. (See e.g. People v Calderon, 48 Misc 3d 1226[A], 2015 NY Slip Op 51273[U] [Sup Ct, NY County 2015].) In this instance, the defendant makes a different and compelling argument for entitlement to the records than the existence of civil lawsuits alleging parallel misconduct. The federal cases are criminal prosecutions, and two finders of fact determined that the officer in question lacked credibility in describing actions closely resembling those he allegedly took in this case. Any records in the CCRB or NYPD files concerning the officer’s conduct in the two federal cases are subject to in camera review at a minimum.
As to that part of the defendant’s application to review CCRB and NYPD “ticket fixing” materials, however, no significant nexus exists at this juncture. Although the misconduct in the ticket fixing scheme involved traffic enforcement, that superficial similarity does not render the conduct analogous in a way that would entitle the defense to obtain personnel records before it is determined whether the officer will testify. The defendant has not demonstrated that obtaining more information *515 about the officer’s role in ticket fixing would enhance his preparation for trial except for basic impeachment. The defense is already aware of the nature of the conduct the officer has engaged in that might undermine his general credibility by citing several published reports. The Bronx ticket fixing corruption scheme the defense alludes to involved multiple officers using their official position to have traffic summonses administratively voided or dismissed for relatives and individuals they knew; the summonses had been issued by other officers who did not necessarily participate in the scheme. An officer’s participation in ticket fixing may give rise to impeachment of the officer’s general credibility and therefore require the prosecutor to turn over Giglio material at the appropriate time, without implicating the defendant’s prior access to the materials under People v Gissendanner (48 NY2d 543 [1979]). There is not a sufficient basis for the defense to seek out pretrial information about the underlying prosecution of the unrelated disciplinary action for ticket fixing.[3] However, the analysis under People v Gissendanner does not relieve the prosecutor from Brady and future Giglio obligations. (See People v Garrett, 23 NY3d 878 [2014].) The Bronx County District Attorney’s Office is well aware of the ticket fixing probe, having prosecuted a number of the offending officers, and has routinely turned over relevant Giglio material if the ADA intends to call one of the offending officers as a witness at a hearing and/or at trial and would be expected to do so in this case as well.
The defendant’s access to any personnel records related to the federal cases via the subpoena to be issued based on this application does not give rise to a presumption or ruling that the defense counsel may use what is reviewed to cross-examine police witnesses. The scope of any cross-examination is subject to a different analysis, delineated by the Court of Appeals in People v Smith (27 NY3d 652 [2016]). That assessment should be left to the trial judge, who is in the best position to exercise his or her discretion once the trial issues have been framed. (See id. at 663.)
Applying these principles, the defendant’s motion to subpoena records of the CCRB and NYPD is granted as to any records relating to the two federal lawsuits in which the officer *516 was found to be incredible at suppression hearings. The court will conduct an in camera inspection to determine which materials should be made available to the defense.

. The defendant’s motion did not request CCRB summaries in the alternative (see Matter of Luongo v Records Access Officer, Civilian Complaint Review Bd., 49 Misc 3d 708 [Sup Ct, NY County 2015]); thus, no ruling is made on the release by subpoena of any summary not otherwise ordered released pursuant to this decision.

. In the third case the defense cites (People v Diaz, Sup Ct, Bronx County, indictment No. 3213-2014), a judge of this court found the same officer and his partner lacked reasonable suspicion to detain a suspect charged with gun possession. The officer in question was not called as a witness in the suppression hearing. The defense suggests the Assistant District Attorney (ADA) chose not to call the officer as a witness either because the ADA knew the officer’s previous history of being found not credible would subject him to cross-examination and prove disadvantageous, or because the ADA personally doubted the officer’s credibility. Given the numerous reasons why a particular witness is not called at a suppression hearing, these arguments are too speculative to support an application for any additional personnel files at this time.

. In addition, on information and belief, a judge of this court has issued a protective order barring the District Attorney’s Office from releasing this information without defense counsel agreeing to limit its use to a particular case in which an offending officer is testifying.